UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY D. LEE,

      Plaintiff,                        CIVIL ACTION NO. 10-12625

    v.                                  DISTRICT JUDGE NANCY G. EDMUNDS

DEAN WILLEY, T. ZISCHKE,         MAGISTRATE JUDGE MARK A. RANDON
C/O BAGLEY, C/O OWEN, SGT. D.
THOMAS, WARDEN NICK LUDWICK,
KAMESHWARI MEHRA, PAUL
SCHNEEMAN, and WILLS DIXON, all
sued in their individual and official capacities.

      Defendants.
_____/

**REPORT AND RECOMMENDATION TO DENY MEHRA AND SCHNEEMAN'S
MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 53, 56)**

**I. INTRODUCTION**

      This is a prisoner civil rights case. Plaintiff Larry Lee alleges that officials at the Charles Egeler Reception and Guidance Center in Jackson, Michigan ("Charles Egeler") subjected him to anti-gay harassment, were deliberately indifferent to his mental and physical disorders, and failed to protect him from sexual assault by other prisoners. Judge Nancy Edmunds referred the matter to this Magistrate Judge for all pretrial matters.

      Two motions are pending. Kameshwari Mehra and Paul Schneeman (collectively the "moving Defendants"), medical personnel who provided Plaintiff mental health counseling at Charles Egeler, move for summary judgment on the ground that Plaintiff failed to exhaust his

- 1 -

prison administrative remedies (Dkt. Nos. 53, 56).[1] Plaintiff responded to the motions (Dkt. Nos. 55, 58), and the moving Defendants filed reply briefs (Dkt. Nos. 57, 59). Because this Magistrate Judge finds that Plaintiff sufficiently exhausted the administrative remedies that were *available* to him, **IT IS RECOMMENDED** that both motions be **DENIED**.

## II.  FACTS

### A. Plaintiff's Complaint Allegations

Plaintiff is a homosexual male, regarded as having effeminate mannerisms.  He was transferred to Charles Egeler to begin serving his prison sentence on March 23, 2007.  Viewed in a light most favorable to Plaintiff, his *pro se* Complaint[2] chronicles a series of abuses at Charles Egeler during which correction officers ("CO") degraded and humiliated him for being a homosexual and made comments in front of other prisoners such as: "Boys listen up! Take a good look at this one.  This ass is for sale!" "Get it while it's hot."  "He sucked a lot of dicks and likes to take it up the ass. . .any buyers?" (Dkt. No. 1, Pl. Complt. ¶¶ 22).

Plaintiff began to receive threats of sexual assault from other inmates.  On April 4 and April 5, 2007, Plaintiff notified three COs (Bagley, Owen and Zischke) that prisoners were pursuing him for sex and requested protection (Pl. Compl. ¶¶ 29-30).  In response, on April 4, 2007, CO Owen told Plaintiff to "shut up" and Bagley said he did not "have time" to deal with Plaintiff's complaints; on April 5, 2007, CO Zischke responded, "I looked you up on the computer, [sic] I could care less about protecting you" (*Id.*).

---

[1] Schneeman's motion is styled as a concurrence with the arguments and relief sought by Mehra (Dkt. No. 56).

[2] Plaintiff is now represented by counsel.

Against this backdrop and plagued with panic attacks and hallucinations, Plaintiff was seen by Defendant Mehra, a psychiatrist, on April 6, 2007. Plaintiff told Dr. Mehra that he was being pursued sexually by other prisoners and asked Mehra for protection, to no avail.

Three days later, on April 9, 2007, two prisoners – one armed with a weapon – entered Plaintiff's cell and raped him (Compl. ¶ 31). Plaintiff went to the officers' desk and asked if he could talk to a mental health professional. He got into an argument with an unidentified CO and demanded a grievance form. Plaintiff's request for a form was denied, and the CO ordered him to return to his cell (Compl. ¶ 32).

The next day, Plaintiff approached another officer, CO Zischke, and asked Zischke for a grievance form so he could grieve the sexual assault and the failure of staff to protect him (Compl. ¶ 33). CO Zischke called Plaintiff a "faggot" and denied his request for a grievance form. Left with no other option, Plaintiff wrote his grievance out on a piece of paper (the "plain paper grievance") and placed it in the outgoing grievance box (*Id*.) The plain paper grievance stated, in part:

> Substitute Grievance because officers including officer Zischke refused to give me a grievance forms [sic]
> 
> \* \* \*
> 
> I reported all of this [COs actions and prisoner threats of sexual assault] to my psychiatrist Dr. Mehra and he did nothing to prevent me from being sexually abused. I reported all of this on 3-26-07 to my other psychologist **Mr. Paul Schneeman and both Mehra and Schneeman** knew of my mental illnesses related to anti-gay sexual abuse and [neither] . . . Mehra nor Schneeman did anything to protect me from being sexually abused.

(Dkt. No. 55, Ex.3) (emphasis added).

On April 12, 2007, Resident Unit Manager ("RUM") Wozniak called Plaintiff to his office to discuss Plaintiff's plain paper grievance (Compl. ¶ 37). RUM Wozniak told Plaintiff

the matter would be investigated, that the investigation may take a long time, and that Plaintiff should wait for a response before taking any legal action (Compl. ¶¶ 37-38).  In the meantime, Wozniak promised Plaintiff that he would be moved to a new cell (*Id*.).

On either April 12 or 13, 2007, Plaintiff received official grievance forms.  He filed a number of grievances after receiving the forms but did not re-file the plain paper grievance.

Plaintiff was moved to a new cell in an adjacent building near the officers' station on April 15, 2007.  He considered this new location safe but, a few days later, was moved again, this time to a location he considered unsafe (Compl. ¶ 41).  The COs continued to harass Plaintiff until he was transferred from Charles Egeler to the Florence Crane Correctional Facility on May, 9, 2007 (Compl. ¶¶ 41-42).

Plaintiff did not receive a written response to his plain paper grievance; he re-filed it on February 16, 2008 and August 10, 2009.  Plaintiff took no further steps to have his complaints resolved internally and filed this lawsuit on July 1, 2010.  He was released from MDOC custody on a two-year term of parole on October 19, 2010.

**B. The MDOC's Grievance Procedure**

The MDOC has a grievance policy through which prisoners may file complaints regarding the conditions of their incarceration.  Under this system, a grievance is exhausted if pursued through all three stages (four stages including the verbal complaint) in compliance with the policy (Dkt. No. 53, Ex. 1, ¶ B).  Timeliness of filing a grievance is an essential part of the process. Within two days of discovering a grievable issue, the inmate verbally must attempt to resolve the issue with those involved (*Id.* at ¶ P).  If this attempted resolution is unsuccessful, the inmate may then file a Step I grievance form within five business days of the attempted

resolution (*Id*. at ¶ V). *The policy mandates the use of a grievance form (CSJ-247A) to file Step I grievance* (*Id*. at ¶ R). A grievance may be rejected if the grievance is filed in an untimely manner, unless there is a valid reason for the delay (*Id.* at ¶ G.3).

### III. ANALYSIS

**A. Standard of Review**

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3rd Cir. 2006). For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law." *Id.* Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party does not bear the burden of proof at trial, the moving party may discharge its burden by showing that there is an absence of evidence to support the non-moving party's case. *Id.* at 325. If the moving party can make such a showing, then the burden shifts to the nonmoving party to present evidence that a genuine fact issue exists and a trial is necessary. *Id.* at 324. In meeting its burden, the non-moving party must offer specific facts that establish a material dispute, not simply create "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586-87 (1986). In deciding whether an issue of material fact exists, the Court must consider all facts and their

reasonable inferences in the light most favorable to the non-moving party. The Court's function, however, is not to weigh the evidence and rule on the truth of the matter, but rather to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If there are no issues that require a trial, then judgment as a matter of law is appropriate. *Id.* at 251-52.

**B. Plaintiff Exhausted the Administrative Remedies that were Available to him**

### *1. The Meaning and Purpose of Proper Exhaustion*

Under the Prisoner Litigation Reform Act ("PLRA"), a prison inmate cannot bring a civil rights action challenging prison conditions until "such administrative remedies *as are available* are exhausted." 42 U.S.C. § 1997e(a). (Emphasis added). The Supreme Court defines proper exhaustion as "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) quoting, *Pozo v. McCaughtry,* 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* The Supreme Court also observed that "[t]he PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Id.* at 93, quoting, *Porter v. Nussle,* 534 U.S. 516, 525 (2002). Exhaustion serves a dual purpose: it gives prisoners "an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors." *Id.* at 94.

Like the federal PLRA, Michigan law has a similar statute requiring the exhaustion of administrative remedies of claims relating to prison conditions before filing suit in state court. *See* Mich. Comp. Laws § 600.5503(1) ("A prisoner shall not file an action concerning prison conditions until the prisoner has exhausted all available administrative remedies").  Under both statutes, Plaintiff exhausted his available administrative remedies.

As discussed above Section 1997e(a) requires a prisoner to exhaust "such remedies as are available." 42 U.S.C. § 1997e(a). The plain meaning of the term "available" is that a prisoner is required to exhaust only those procedures that he is reasonably capable of exhausting. *See Nixon v. Sanders*, 243 F. App'x 197, 199 (8th Cir.2007) (citing *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir.2001) (prisoner's allegations that prison officials denied his requests for grievance forms could raise inference that he was prevented from utilizing prison's remedies, rendering the grievance process unavailable under § 1997e(a)); *see also Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir.2004) (refusal to give prisoner grievance forms can render administrative grievance system unavailable); *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir.2003) (same).  Section 1997e(a) is an affirmative defense on which the defendant bears the burden of proof.  *Jones v. Bock*, 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007).

The moving Defendants make several arguments as to why Plaintiff failed to exhaust his administrative remedies.  First, they argue that Plaintiff's "letter" (plain paper grievance) was not written on the proper CSJ-247A grievance form and, therefore, cannot properly exhaust his administrative remedies.  Second, even if the letter is considered a Step I grievance, Plaintiff failed to appeal to Step II when the prison failed to respond to his letter.  Finally, even if CO Zischke failed to provide Plaintiff a grievance form, he was still required to fully exhaust his

administrative remedies. None of these arguments are persuasive given the circumstances of this case.

As to the moving Defendants first argument, the law in this Circuit is that if a grievance form is not available to a prisoner, he must attempt to file one without the form or be deemed to have failed to exhaust his administrative remedies. *Jones v. Smith*, 266 F.3d 399, 400 (6th Cir. 2001) (it is inadequate for a prisoner to allege he was denied a form for a grievance, but he must show that he attempted to file a grievance without the form); *Anderson v. Meeks*, 79 F. A'ppx 113, *114 (same). Because this Magistrate Judge is compelled to assume the truth of Plaintiff's allegation that Zischke *and other COs* denied Plaintiff's request for grievance form, the argument that his attempt to nonetheless comply with the prison's grievance procedure cannot exhaust his administrative remedies is unavailing. Moreover, Plaintiff grieved the denial of the grievance forms, and Warden Ludwick determined that Plaintiff was wrongly denied a grievance form (Dkt. No. 55, Ex. A).

The moving Defendants next argue that Plaintiff failed to timely appeal to Step II. While this Magistrate Judge agrees that Plaintiff would ordinarily be required to appeal through all steps of the grievance procedure, exceptional circumstances justify a finding that appealing to Step II or III was not an available remedy. The moving Defendants cite *Hartfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) and *Stewart v. Caruso*, No. 05-10022, 2006 U.S. Dist. LEXIS 77754, *8-9 (E.D. Mich. Oct. 13, 2006) (unpublished) in support of their argument, but these cases are distinguishable. Neither case dealt with a prisoner who was denied a form – required by Michigan Department of Corrections' policy to initiate a grievance. This is significant because, due to the conduct of prison staff, the matter was outside the prison's procedural rules from the

outset. Nor did either case involve a claim where a prison official advised the prisoner to wait until the conclusion of a potentially lengthy internal prison investigation or involve the atmosphere of hostility alleged by Plaintiff. Plaintiff did what prison officials told him to do and waited approximately ten months, without receiving a written response, before resubmitting his plain paper grievance. He later resubmitted the plain paper grievance a third time before filing this lawsuit. The moving Defendants have not identified any past practice in which prison officials had responded to a plain paper grievance, such that Plaintiff could reasonably be expected to know how to proceed.

Plaintiff was not trying to avoid complying with the prison's administrative grievance rules. Rather, if his version of events is to be believed, Plaintiff went to great lengths to notify prison officials of his claims so they could be addressed internally. Under these circumstances, dismissal of his claims for failure to exhaust would be inappropriate. *See Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006) (courts ought not impose severe technical requirements on prisoners who comply with the spirit and purpose of the administrative exhaustion rules).

The moving Defendants final argument (in two parts) is that Plaintiff could have sought a form from someone other than CO Zischke and should have re-filed his paper grievance on a grievance form once he received one. However, Plaintiff alleges that he requested grievance forms from at least one other unidentified officer, before Zischke refused him using derogatory language. Also, it would not have made sense for plaintiff to re-file his paper grievance on an official form since, by the time Plaintiff received the forms, RUM Wozniak had acknowledged receipt of the plain paper grievance and assured Plaintiff the matter would be investigated; she also promised Plaintiff that he would be moved – which he was a few days later. Based on these

representations, Plaintiff had every reason to believe his complaint would be addressed and acted accordingly in waiting several months to re-submit his plain paper grievance.

## IV. CONCLUSION

A prisoner is required to comply with a prison's grievance procedure to the extent it is available. He is not, however, required to make Herculean efforts when confronted with prison officials who attempt to thwart his efforts to comply with prison policy. Viewing the facts in a light most favorable to Plaintiff, this Magistrate Judge finds that Plaintiff properly pursued all avenues of the grievance procedure that were available to him. Therefore, **IT IS RECOMMENDED** that the moving Defendants' motions (Dkt. Nos. 53, 56) be **DENIED**.[3]

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

---

[3] The moving Defendants' arguments with respect to the statute of limitations need not be addressed because at the hearing they conceded that if Plaintiff did file a grievance, the statute of limitations is tolled. This Magistrate Judge finds that the plain paper grievance was a grievance for tolling purposes.

Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                                                s/Mark A. Randon
                                                MARK A. RANDON
                                                UNITED STATES MAGISTRATE JUDGE

Dated: February 1, 2012

### Certificate of Service

I hereby certify that a copy of the foregoing document was mailed to the parties of record on February 1, 2012, by electronic and/or ordinary mail.

                                                *s/Barbara M. Radke*
                                                *Judicial Assistant*