UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY LEE #631639,

               Plaintiff,           CIVIL ACTION NO. 10-12625

      v.                      DISTRICT JUDGE NANCY G. EDMUNDS

DEAN WILLEY,             MAGISTRATE JUDGE MARK A. RANDON
T. ZISCHKE, BAGLEY, OWEN,
D. THOMAS, NICK LUDWICK,
KAMESHWARI MEHRA,
PAUL SCHNEEMAN,
WILLS DIXON,

               Defendants.

_____/

**REPORT AND RECOMMENDATION TO**
**GRANT IN PART AND DENY IN PART**
**MDOC DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 78)**

## I.    BACKGROUND

Plaintiff is a homosexual male, regarded as having effeminate mannerisms. He was

transferred to the Charles Egeler Reception and Guidance Center in Jackson, Michigan ("Charles

Egeler") to begin serving his prison sentence on March 23, 2007. (Dkt. No. 1, Plaintiff's

Complaint at ¶17). Viewed in a light most favorable to Plaintiff, his *pro se* Complaint[1]

chronicles a series of abuses at Charles Egeler during which correctional officers ("COs")

degraded and humiliated him for being a homosexual and made comments in front of other

prisoners. Plaintiff alleges CO Willey made comments such as: "You're gay, aren't you?" "We

_____

[1]Plaintiff is now represented by counsel.

will get you cleaned up, make you pretty, get some Kool-Aid on your lips, the guys on the yard will like you." "You can work the yard with Ursula the transsexual." "You can be one of Ursula's callgirls[sic]." "You little faggot, I'm going to make you pay for this." "Boys listen up! Take a good look at this one. This ass is for sale!" (Dkt. No. 1 at ¶¶ 19-22). Plaintiff alleges CO Thomas made comments such as: "Sissy for sale" and "You been out deah[sic] stealin[sic] ass?[2] We'll make sure somebody steals yo[sic] ass!" (Dkt. No. 1 at ¶22). After Plaintiff told COs Willey and Thomas that he was experiencing head pain, severe stress, depression, and anxiety because of the anti-gay abuse, CO Willey said: "I don't give a fuck about your mental illness." (Dkt. No. 1 at ¶25). Plaintiff says CO Thomas was indifferent to his physical and mental injuries. (Dkt. No. 1 at ¶25).

As a result of the COs' comments, Plaintiff began to receive threats of sexual assault from other inmates. On April 2, 2007, Plaintiff reported the abuse to Dixon, a psychologist at Charles Egeler. Plaintiff says Dixon made the following comments: "[Plaintiff] was wrong in the eyes of God for being gay" and "What do you mean you are gay? What do you mean you wear women's clothing? What's wrong with you? You are not a woman; you are not supposed to wear woman's clothing. Being gay and wearing women's clothing is morally wrong." (Dkt. No. 1 at ¶27). Plaintiff asked Dixon for protection, and Dixon responded: "I don't think you need protection. What you need is God." (Dkt. No. 1 at ¶27).

On April 4 and April 5, 2007, Plaintiff notified COs Bagley, Owen, and Zischke that prisoners were pursuing him for sex, and he requested protection. (Dkt. No. 1 at ¶29). In response, CO Owen told Plaintiff to "shut up" and CO Bagley said he did not "have time" to deal

---

[2]Public records indicate Plaintiff was convicted of Criminal Sexual Conduct, 3rd Degree (incapacitated Victim), in violation of MCLA §750.520d(1)(c), http://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=631639.html, last visited August 10, 2012.

with Plaintiff's complaints; on April 5, 2007, CO Zischke responded, "I looked you up on the computer, [and] I could care less about protecting you." (Dkt. No. 1 at ¶30).[3]

On April 9, 2007, two prisoners – one armed with a weapon – entered Plaintiff's cell and anally raped him. (Dkt. No. 1 at ¶31). Plaintiff alleges that during the assault, one of the prisoners stated, "everybody already knows you wanna fuck, even the police said it, so what's up?" (Dkt. No. 1 at ¶31). Plaintiff went to the officers' desk and asked if he could talk to a mental health professional. He got into an argument with the unidentified CO and demanded a grievance form. Plaintiff's request for a form was denied, and the CO ordered him to return to his cell. (Dkt. No. 1 at ¶32).

On April 10, 2007, Plaintiff went to the officers' desk and asked CO Zischke for a grievance form so he could file a grievance regarding the sexual assault and lack of protection. Plaintiff's request was denied, and CO Zischke called Plaintiff a "faggot." (Dkt. No. 1 at ¶33). Plaintiff wrote the grievance on paper, but never received a response. (Dkt. No. 1 at ¶33).

Plaintiff was moved to a new cell in an adjacent building near the officers' station on April 15, 2007. He considered this new location safe but, a few days later, was moved again, this time to a location he considered unsafe. (Dkt. No. 1 at ¶41). The COs continued to harass Plaintiff until he was transferred from Charles Egeler to the Florence Crane Correctional Facility on May 9, 2007. (Dkt. No. 1 at ¶42).

Plaintiff brought a lawsuit under 42 U.S.C. §1983. He alleges Warden Ludwick; psychologist Dixon; and COs Willey, Zischke, Bagley, Owen, and Thomas were deliberately indifferent to the sexual and physical assaults he endured from other inmates. (Dkt. No. 1 at

_____

[3]See note 2, *supra*.

¶44).  Plaintiff also alleges Defendants were deliberately indifferent to his serious medical needs. (Dkt. No. 1 at ¶49).

As it relates to Warden Ludwick, Plaintiff alleges he failed to train his employees and failed to effectuate a custom, policy and practice of how prisoners receive grievance forms, how to investigate prisoner abuse, how to protect homosexuals from sexual assault and violence, how to treat serious medical needs, and how to maintain the confidentiality of inmates' sexual orientation.  (Dkt. No. 1 at ¶¶ 46, 51, 55).

Plaintiff also alleges Defendants' "inaction and action" caused him to suffer cruel and unusual punishment in violation of the Eighth Amendment.  (Dkt. No. 1 at ¶¶ 45, 50).

Further, Plaintiff alleges COs Willey and Thomas violated his substantive due process right to personal security and bodily integrity under the Fourteenth Amendment.  (Dkt. No. 1 at ¶48).  Plaintiff says COs Willey, Thomas, and Zischke violated his substantive due process right to privacy and the right to maintain the confidentiality of his sexual orientation.  (Dkt. No. 1 at ¶53).

Plaintiff alleges Defendants violated Michigan's Elliot-Larsen Civil Rights Act ("ELCRA") by discriminating against him based on gender and sexual orientation.  (Dkt. No. 1 at ¶52A).  Plaintiff also alleges Defendants deprived him of equal protection rights under the Fourteenth Amendment.  (Dkt. No. 1 at ¶57).

Finally, Plaintiff brought a state-law claim for intentional infliction of emotional distress ("IIED") against COs Willey, Zischke, Thomas, psychologist Dixon, and Warden Ludwick.

(Dkt. No. 1 at ¶59). Plaintiff seeks injunctive relief, damages, and asks the Court to certify his lawsuit as a class action.[4] He sued Defendants in their official and individual capacities.

Before the Court is Defendants' Motion for Summary Judgment. (Dkt. No. 78). Plaintiff filed a Response on June 13, 2012. (Dkt. No. 88). Defendants did not reply.

Plaintiff is not entitled to injunctive relief; he was paroled on October 19, 2010. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) ("to the extent [plaintiff] seeks . . . injunctive relief his claims are now moot as he is no longer confined to the institution that searched his mail"). In addition, Plaintiff concedes that Defendants cannot be sued in their official capacities. (Dkt. No. 88 at 10). Plaintiff also concedes that his claims against Warden Ludwick are subject to summary judgment. (Dkt. No. 88 at 10-11). Finally, Plaintiff concedes that his claim under ELCRA fails. (Dkt. No. 88 at 11).

For the following reasons, **IT IS RECOMMENDED** that Defendants' motion be **GRANTED IN PART AND DENIED IN PART**.

## II.   STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v.*

---

[4] On July 1, 2010, Plaintiff filed a Motion For Class Action Certification. (Dkt. No. 3). However, Plaintiff's counsel withdrew this motion, without prejudice, on December 3, 2012. (Dkt. No. 28). Because Plaintiff's counsel has not re-filed a motion for class-action certification, this Magistrate Judge finds Plaintiff's request for class-action certification is moot.

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241

F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of evidence to

support the non-moving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If

the moving party carries this burden, the party opposing the motion "must come forward with

specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The

Court must determine whether the evidence presents a sufficient factual disagreement to require

submission of the challenged claims to a jury or whether the evidence is so one-sided that the

moving party must prevail as a matter of law. *See Anderson*, 477 U.S. at 252 ("The mere

existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there

must be evidence on which the jury could reasonably find for the plaintiff").

## III.   DEFENDANTS' PROCEDURAL ARGUMENTS

### A.   Failure to Exhaust Administrative Remedies

On April 10, 2007, Plaintiff filed a three-page handwritten document as a "substitute

grievance" because he alleges officers refused to provide him a standard grievance form:

> A number of officers have been refusing to give me grievance forms and now
> today 4-10-07 Officer Zischke a white female officer that works in my building is
> also refusing to provide me with a grievance form. I am filing this letter as a
> grievance because I need help and I can afford no delays. [O]n April 2, 07[sic] I
> complained to Psychologist Dixon that guards were encouraging prisoners to
> advance toward me for sex. I let Psychologist Dixon know that Officers Dean
> Willey and Officer . . . D. Thomas were also encouraging many prisoners to
> advance toward me for sex by telling prisoners that "he's sucked a lot of dicks and
> likes to take it up the ass[.]" Officers Willey and . . . D. Thomas . . . all would tell
> prisoners that I was for sale. I told this to Psychologist Dixon and he did nothing
> to help despite knowing my mental illnesses and past traumatic sexually abusive
> experiences. [O]n 4-9-07 during our dinner time I was preparing to go to dinner
> but decided against it because I wasn't feeling well. Two African American
> prisoners that I didnt[sic] recognize barged into my cell, threatened to stab me
> with a shank if I made a sound. The two prisoners both took turns raping me via

anal sex. [I] tried to tell Officer Zischke.  She called me a faggot and refused to
give me a grievance.  [O]n or about 4-4-07 I reported to Officers Bagley and
Owen that I needed protection because men were coming after me for sex.  Owen
told me to shut up because I was too loud and emotional, Officer Bagley said she
did not have time to deal with me.  Both Bagley and Owen[] refused to protect
me.  On 4-5-07 at 12:50 pm I again complained to Officer Zischke that men were
coming after me for sex.  Officer Zischke refused to help me and said as she has
said again and again "You go girlfriend[.]"  I told Sgt. D. Tomas, Psychologist
Dixon, . . . and Officer Willey . . . that I suffer from daily chronic headaches due
to a head injury; I also told them all that I am being medically treated for mental
illnesses all related to anti gay abuse.  Despite me telling them all this regarding
my illness; they continued to call me every anti-gay name you can think of.

(Dkt. No. 1; Ex. A).  Defendants argue that Plaintiff's three-page handwritten document does not

satisfy the requirements of the MDOC grievance policy, he could have used the standard

grievance form he received on April 12, 2007 to grieve the alleged sexual assault, and Plaintiff

has produced no evidence that any person at the MDOC actually received the document.

On February 1, 2012, this Magistrate Judge recommended that dismissal of Plaintiff's

claims for failure to exhaust would be inappropriate, and Plaintiff pursued all avenues of the

grievance procedure that were available to him.  (Dkt. No. 68).  On February 29, 2012, Judge

Nancy G. Edmunds adopted the recommendation.  (Dkt. No. 72).  Accordingly, Defendants do

not succeed on their failure to exhaust argument.

**B.**     **Statute of Limitations**

Defendants next argue that the allegations in Plaintiff's Complaint occurred in March and

April 2007, but Plaintiff did not file his Complaint until July 2010.  According to Defendants,

Plaintiff's claims are barred by the three-year statute of limitations; and Plaintiff's tolling

argument fails because no one at the MDOC received Plaintiff's "substitute grievance," and the

document does not comply with the grievance policy.

However, on February 1, 2012, this Magistrate Judge found that the "substitute grievance" constituted a valid grievance, and the statute of limitations was tolled.  (Dkt. No. 68). Accordingly, Defendants do not succeed on their statute of limitations argument.

## IV.   ANALYSIS

### A.   Plaintiff's Deliberate Indifference Claims

Plaintiff alleges psychologist Dixon; and COs Willey, Zischke, Bagley, Owen, and Thomas were deliberately indifferent to the sexual and physical assaults he endured from other inmates and to his serious medical needs.

#### 1.   Deliberate Indifference to Plaintiff's Safety

"To raise a cognizable constitutional claim for deliberate indifference to an inmate's safety, an inmate must make a two-part showing: (1) the alleged mistreatment was objectively serious; and (2) the defendant subjectively ignored the risk to the inmate's safety." *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

To satisfy the first prong of his deliberate indifference claim, Plaintiff must show he was incarcerated under conditions posing a substantial risk of serious harm.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citation omitted).  Plaintiff presents evidence that he is a homosexual male who had problems with anti-gay and sexual harassment at the Washentaw County Jail before he arrived at Charles Egeler.  (Dkt. No. 90; Ex. 7, MDOC Case Management Progress Note). Plaintiff has mental health issues due to the harassment he suffered.  (Dkt. No. 90; Ex. 5, MDOC Psychiatric Assessment and Dkt. No. 90; Ex. 7).  Viewing the evidence in the light most favorable to Plaintiff, this Magistrate Judge finds he has raised an issue of fact as to whether a reasonable corrections officer would be put on notice that Plaintiff required close supervision, and whether the failure to protect him from risk of harm was sufficiently serious.

To satisfy the second prong of his deliberate indifference claim, the Sixth Circuit established the following criteria:

> [t]he plaintiff must establish that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also the draw the inference."

*Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009) (quoting *Farmer*, 511 U.S. at 837).  To defeat summary judgment, Plaintiff need only to point to evidence from which a finder of fact could conclude that his vulnerability made his placement in general population a substantial risk to his safety, of which Defendants were aware.  *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004).  The awareness can be demonstrated through circumstantial evidence.  *Id.*

### a.        CO Willey and CO Thomas

Plaintiff presented his deposition testimony in which he alleges CO Willey said: (1) "[w]e will get you cleaned up, make you pretty.  Get some Kool-Aid on your lips.  The guys on the yard will like you"; and (2) "Boys, listen up.  Take a good look at this one.  This ass is for sale!" (Dkt. No. 90; Ex. 2, Lee Deposition at 148-149).

Plaintiff alleges CO Thomas said: (1) "[s]issy for sale"; and (2) "You've been out deah[sic] stealin[sic] ass.  We'll make sure somebody steals yo[sic] ass!"  (Dkt. No. 90; Ex. 2 at 150).

According to Plaintiff, he requested that COs Willey and Thomas place him in protective custody before he was sexually assaulted, and they did not honor his request.  (Dkt. No. 90; Ex. 2 at 145).

Based on the alleged comments COs Willey and Thomas made and viewing the evidence in the light most favorable to Plaintiff, COs Willey and Thomas arguably knew that sexual

assault occurred in prison and that homosexual inmates were vulnerable to sexual attack. This Magistrate Judge finds there is a genuine issue of material fact regarding whether COs Willey and Thomas knew of and disregarded a substantial risk of harm to Plaintiff by not placing him in protective custody.

### b.    COs Bagley, Owen, and Zischke

Plaintiff presents a handwritten grievance that he filed on April 10, 2007. The grievance says that on April 4, 2007, he told COs Bagley and Owen that he needed protection because inmates were coming after him for sex, and they both refused to provide protection. (Dkt. No. 90; Ex. 11, Paper Grievance). Plaintiff claims that on April 5, 2007, he told CO Zischke that he needed protection, and CO Zischke refused to provide protection. (Dkt. No. 90; Ex. 11). According to psychologist Dixon, correctional officers had the authority to place Plaintiff in protective custody. (Dkt. No. 88; Ex. 14, Wills Dixon Deposition at 30-31).

This Magistrate Judge finds a reasonable jury could conclude that COs Bagley, Owen, and Zischke were aware that Plaintiff was a homosexual inmate, and aware that such inmates are vulnerable to attack. Viewing the evidence in the light most favorable to Plaintiff, there is a genuine issue of material fact regarding whether COs Bagley, Owen, and Zischke knew of and disregarded a substantial risk of harm to Plaintiff by not placing him in protective custody.

### c.    Psychologist Dixon

Psychologist Dixon's deposition occurred on July 29, 2011. The following exchange occurred during the deposition:

**ATTORNEY**:    when you spoke with Mr. Lee, he did relate to problems in
the Washtenaw County Jail?

**DIXON**:    Yes.

.    .    .

**ATTORNEY**:          Do you remember what those problems were?

**DIXON**:             I can only remember what is written down here, what I
                       wrote, anti-gay harassment, sexual harassment.


.    .    .

**ATTORNEY**:          He did refer to ongoing anti-gay harassment; did you see
                       that?

**DIXON**:             Yes.


.    .    .

**ATTORNEY**:          You were aware of at least some reports of prison rapes,
                       right?

**DIXON**:             With Mr. Lee?

**ATTORNEY**:          Well, first of all, just in general?

**DIXON**:             Oh, yes.

**ATTORNEY**:          I take it that if you had information that a particular person
                       or class of persons were in jeopardy you would want to take
                       protective action?

**DIXON**:             Yes.

**ATTORNEY**:          Do you recall Mr. Gay being – or Mr. Lee being openly
                       gay?

**DIXON**:             Yes.


.    .    .

**ATTORNEY**:          And so if an inmate were to say – how about if they sought
                       protection from correctional officers or MDOC officials?

**DIXON**:             Then they would be protected.


-11-

ATTORNEY:        That is – that was the practice, that if they sought that protection it should be provided?

DIXON:        Yes.

ATTORNEY:        Because if they are seeking protection that would be one occasion [that they are vulnerable]?

DIXON:        Yes.

.    .    .

ATTORNEY:        And would it be fair to say that since you can't recall your discussion with Mr. Lee that you can't recall one way or the other whether he sought protection when he discussed with you his situation?

DIXON:        No, but if he did I would have – make a note – I would have made a note of that.

.    .    .

ATTORNEY:        You mentioned the brevity of Exhibit 5 [Dixon's evaluation of Plaintiff], given the fact that you spoke for an hour and this is a single paragraph, Exhibit 5, does that suggest to you that not everything you talked about made it onto Exhibit 5?

DIXON:        Yes.

(Dkt. No. 88; Ex. 14 at 41-43, 45-46, 55). Plaintiff testified as follows during his deposition:

ATTORNEY:        What – and tell me in your own words what happened here with Psychologist Dixon.

PLAINTIFF:        Well, again, I asked for protection and then he quoted the Bible. He said that I didn't need protection and that my problem was my homosexuality and my alleged transgender issues, and how men are not supposed to behave this way, not supposed to engage in homosexual activities, not supposed to wear women's clothing. He had quoted passages from the Bible. He had pulled the Bible out directly and then later gave me the piece of paper entitled something that starts with a "D."

.    .    .

-12-

| | |
|---|---|
| **ATTORNEY**: | So Psychologist Dixon was not very helpful and said some things that psychologists obviously shouldn't say to people; is that your kind of the gist of it? |
| **PLAINTIFF**: | No.  The gist of it is that he did not help out with protection.  That is the gist of it.  I mean, the fact that he gave his opinion was wrong, but the fact that he would not offer any protection and then blame my homosexuality for the reason of not offering any protection, that is the argument. |

(Dkt. No. 90; Ex. 2 at 113-114).  According to Dixon, he had the authority to place Plaintiff in protective custody.  (Dkt. No. 88; Ex. 14 at 30-31).

This Magistrate Judge finds that psychologist Dixon knew that sexual assault occurred in prison, that homosexual inmates were vulnerable to sexual attack, that Plaintiff was a homosexual inmate, and that Plaintiff had problems with sexual and gay harassment in the Washtenaw County Jail.  Viewing the evidence in the light most favorable to Plaintiff, there is a genuine issue of material fact regarding whether psychologist Dixon knew of and disregarded a substantial risk of harm to Plaintiff by not placing him in protective custody.

### d.    Defendants' Arguments

Defendants argue that Plaintiff was never aware of a genuine threat to his safety, and he only complained of a generalized fear.  This Magistrate Judge disagrees.  Plaintiff's handwritten grievance is evidence that the threat was real; Plaintiff says, "men were advancing toward [him] for sex."  (Dkt. No. 90; Ex. 11).  In addition, it does not matter that Plaintiff did not know which inmate would commit the sexual assault.  *See Farmer*, 511 U.S. at 843 ("a prison official [may not] escape liability for deliberate indifference by showing that, while he was aware of an

-13-

obvious, substantial risk to inmate safety, he did not know that [Plaintiff] was especially likely to be assaulted by the specific prisoner who eventually committed the assault").

Defendants next argue that they are entitled to qualified immunity. "In *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), the Supreme Court held that 'government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Salaam v. McKee*, 2008 WL 363598 at *9 (6th Cir. Feb. 11, 2008). A two-part test is used to determine whether qualified immunity applies: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310 (6th Cir. 2005). For a right to be "clearly established," the "contours of the right must be sufficiently clear that a reasonable [government official] would understand that what he is doing violates that right." *Harris v. City of Circleville*, 583 F.3d 356, 366-67 (6th Cir. 2009); *see also Saylor v. Bd. of Educ.*, 118 F.3d 507, 515 (6th Cir. 1997) ("[f]or a constitutional right to be clearly established, as this court has repeatedly noted, 'the law must be clear in regard to the official's particular actions in the particular situation'") (citations omitted).

As stated above, this Magistrate Judge finds there is a genuine issue of material fact regarding whether Plaintiff's Eighth Amendment right was violated. And, the right was clearly established: "[p]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (citations omitted). It thus would have been clear to a reasonable officer that Defendants' conduct was unlawful. Accordingly, Defendants are not entitled to qualified immunity.

-14-

Finally, Defendants rely on *Stewart v. Love*, 696 F.2d 43 (6th Cir. 1982) to support their

argument that Plaintiff's Eighth Amendment right was not violated.  In *Stewart*, the plaintiff was

an inmate at the DeBerry Correctional Institute in Tennessee.  While incarcerated, the plaintiff

was concerned that other inmates were planning an attack on his life.  Fearing for his safety, he

requested protection from various prison officials.  *Stewart*, 696 F.2d at 44.  The prison officials

did not believe the plaintiff was in danger, however, they still transferred him to another unit for

approximately four months.  Upon his return to the unit where inmates he feared were housed,

the plaintiff informed the unit counselor of his fear.  *Id.*  The plaintiff was attacked by another

inmate with a pool stick, and the plaintiff suffered injuries which required medical treatment and

a period of hospitalization.  *Id.* at 44-45.  The plaintiff filed a complaint pursuant to 42 U.S.C.

§1983, alleging the right to be free of cruel and unusual punishment.  *Id.* at 44.

The district court held that "generally an isolated or occasional attack is not sufficient to

state a claim."  *Id.* at 45 (citing *Woodhous v. Commonwealth of Virginia*, 487 F.2d 889 (4th Cir.

1973)).  And, "[i]n the present case, the incident of which the plaintiff complains is clearly a

single, isolated incident.  The court does not believe that a constitutional violation has occurred,

even taking the facts as stated most favorably to the plaintiff."  *Stewart*, 696 F.2d at 45.  The

court went on to say the following:

> [h]ad no action whatsoever been taken to protect the plaintiff, the court would be
> inclined to allow this action to proceed to a full hearing.  However, the plaintiff
> admits that he was transferred to another unit following his complaints and was
> kept separated from the inmates whom he feared for several months.  Then,
> following his transfer back to [where inmates he feared were housed], he has
> reported only the most general allegations, that "someone was going to get hit on
> the head."  Furthermore, while the plaintiff asserts that letters were circulated
> threatening to harm or kill him, he has never seen any such letters and is
> apparently unable to produce them.  Thus, the prison officials were faced with
> unsupported allegations and were required to reach a professional judgment on the
> basis of the facts as they then appeared.  In retrospect, that judgment appears to

have been flawed, but the court concludes that any wrongdoing was mere
negligence, and was not a violation of the plaintiff's rights under either the 8th or
14th Amendments.

*Id.* The Sixth Circuit affirmed the district court's decision dismissing the plaintiff's claims. *Id.*

at 43-44.

This case differs from *Stewart*. Here, Defendants did not place Plaintiff in protective

custody before the sexual assault occurred; Plaintiff was not moved to protective custody until

April 15, 2007 - six days after the assault. In addition, Plaintiff claims other inmates actually

pursued him for sex before the sexual assault occurred.

### 2.    Deliberate Indifference to Plaintiff's Serious Medical Needs

"[D]eliberate indifference to serious medical needs of prisoners constitutes the

'unnecessary and wanton infliction of pain[]' proscribed by the Eighth Amendment." *Estelle v.*

*Gamble*, 429 U.S. 97, 104 (1976) (internal citation omitted). The indifference can be manifested

by: (1) "prison doctors in their response to the prisoner's needs"; (2) "prison guards in

intentionally denying or delaying access to medical care"; or (3) "intentionally interfering with

the treatment once prescribed." *Id.* at 104-105.

Plaintiff does not allege that Defendants interfered with his medical treatment or denied

him access to medical care. Instead, Plaintiff simply alleges that Defendants were "deliberately

indifferent to [his] serious medical needs, including but not limited to, Post Traumatic Stress

Disorder, Psychotic Disorder, Personality Disorder, severe depression[], stress, and anxiety, and

head trauma all related to anti-gay abuse." (Dkt. No. 1 at ¶49). This conclusory assertion is "not

sufficient to show a genuine issue of fact necessary for the denial of summary judgment." *Moore*

*v. Philip Morris Cos.*, 8 F.3d 335, 343 (6th Cir. 1993).

-16-

Psychologist Dixon; and COs Willey, Zischke, Bagley, Owen, and Thomas are entitled to summary judgment on this claim.

### B.    Plaintiff's Cruel and Unusual Punishment Claim

Plaintiff alleges psychologist Dixon; and COs Willey, Zischke, Bagley, Owen, and Thomas' "inaction and action" caused him to suffer cruel and unusual punishment in violation of the Eighth Amendment.

The Eighth Amendment provides "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.  In its purest sense, the Eighth Amendment proscribes cruel and unusual punishment meted out in a penal or disciplinary sense.  In its application by the courts, the Amendment actually protects a wide assortment of interests.  It proscribes disproportionate punishments, *see Weems v. United States*, 217 U.S. 349, 366-67 (1910), "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (plurality opinion), and conduct repugnant to "evolving standards of decency," *Trop v. Dulles*, 356 U.S. 86 (1958) (plurality opinion).

The Constitution "does not mandate comfortable prisons."  *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).  On the other hand, it does not permit inhumane ones, and it is clear that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also Farmer*, 511 U.S. at 832.  The Eighth Amendment imposes affirmative duties on prison officials, "who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of inmates.'"  *Id*. (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)).  "In particular . . . 'prison officials have a duty . . . to protect prisoners from

violence at the hands of other prisoners.'" *Farmer*, 511 U.S. at 833 (citations omitted).  "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'"  *Id.* at 834.  However, every injury suffered by a prisoner at the hands of another prisoner does not translate into constitutional liability for prison officials responsible for the victim's safety.  *Id.*

In order to determine whether an injury translates into constitutional liability, the Court must use the "deliberate indifference" standard articulated in section IV.A.1, above.  *See Davis v. Brian*, 1999 WL 503522 at *3-4 (6th Cir. July 9, 1999).  In other words, Plaintiff's cruel and unusual punishment claim is duplicative of his deliberate indifference claim for failure to protect, and should be dismissed on that basis.

## C.     Plaintiff's Substantive Due Process Claims

Plaintiff alleges COs Willey and Thomas violated his substantive due process right to personal security and bodily integrity under the Fourteenth Amendment, and COs Willey, Thomas, and Zischke violated his substantive due process right to privacy[5] and the right to maintain the confidentiality of his sexual orientation.

"Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

---

[5] Plaintiff's Response argues that Defendants may be held liable for the State-law tort of "invasion of privacy" by publicly disclosing to inmates that Plaintiff was homosexual, inviting sexual attacks on him.  However, this tort was not raised in Plaintiff's Complaint nor did Plaintiff's attorney seek leave to amend Plaintiff's Complaint.

Here, the Eighth Amendment protects against inmate sexual assaults and must be used as a guide for analyzing Plaintiff's claim. Accordingly, Defendants are entitled to summary judgment on this issue.

### D.    Plaintiff's Right to Privacy Claim

Plaintiff alleges COs Willey, Thomas, and Zischke violated his constitutional right to privacy by disclosing his sexual orientation to other inmates.

"[T]he Constitution does not encompass a general right to nondisclosure of private information." *J.P. v. DeSanti*, 653 F.2d 1080, 1090 (6th Cir. 1981). Only those personal rights that can be deemed "fundamental" or "implicit in the concept of ordered liberty" are supported by the Constitution. *Id.* (citation omitted). Plaintiff has not cited any case law nor has this Magistrate Judge found any case law holding that disclosure of Plaintiff's sexual orientation rises to the level of a breach of a right recognized as "fundamental" under the Constitution. Accordingly, COs Willey, Thomas, and Zischke are entitled to summary judgment on this claim.

### E.    Plaintiff's Equal Protection Claims

Plaintiff alleges psychologist Dixon; and COs Willey, Zischke, Bagley, Owen, and Thomas violated the Equal Protection Clause of the Fourteenth Amendment:

> 58.    Defendants[sic] failure to protect Mr. Lee from sexual and physical assaults, failure to provide Lee with grievance forms, failure to adequately consider and investigate his grievances, and their endorsement and ratification of the degrading and abusive acts against homosexuals and treatment of Mr. Lee constitutes discrimination based upon sex and sexual orientation in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution as actionable under 42 U.S.C. § 1983.

(Dkt. No. 1).

"The Equal Protection clause of the Fourteenth Amendment provides that a state may not 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *Cox v. Stapleton*, 2008 WL 4812870 at \*7 (W.D. Mich. Oct. 30, 2008) (citing U.S. Const. amend XIV; *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985)). "Plaintiff's allegations on this point are wholly conclusory. Plaintiff merely states that he is being treated differently because he is homosexual. Plaintiff provides no specific factual allegations to support his contention. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983." *Cox*, 2008 WL at \*7 (citing *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996); *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986); *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir. 1985); *Turnboe v. Stegall*, 2000 WL 1679478 at \*2 (6th Cir. Nov. 1, 2000)).

### F.      Plaintiff's State-Law Claim for IIED

Plaintiff alleges COs Willey, Thomas, Zischke; and psychologist Dixon deliberately subjected him to anti-gay abuse despite their knowledge that he has suffered physical and mental illness related to such abuse.

"To establish a prima facie claim of intentional infliction of emotional distress, the plaintiff must present evidence of: (1) the defendant's extreme and outrageous conduct, (2) the defendant's intent or recklessness, (3) causation, and (4) the severe emotional distress of the plaintiff." *Walsh v. Taylor*, 263 Mich. App. 618, 634 (2004) (citation omitted). According to Michigan law:

> [l]iability for the intentional infliction of emotional distress has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be

-20-

regarded as atrocious and utterly intolerable in a civilized community.  Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.  It is not enough that the defendant has acted with an intent that is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort.  In reviewing a claim of intentional infliction of emotional distress, we must determine whether the defendant's conduct is sufficiently unreasonable as to be regarded as extreme and outrageous.  The test is whether "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim 'Outrageous!'"

*Graham v. Ford*, 237 Mich.App. 670, 674-675 (1999) (citations omitted).

Plaintiff argues that "reasonable jurors can find that the MDOC Defendants who taunted and humiliated Plaintiff for his sexual orientation, in the presence of inmates, subjecting him to the risk of sexual assault, engaged in the intentional infliction of emotional distress."  (Dkt. No. 88 at 10).

This Magistrate Judge finds psychologist Dixon and CO Zischke are entitled to summary judgment; Plaintiff does not present any evidence that psychologist Dixon or CO Zischke taunted or humiliated Plaintiff in the presence of inmates.

However, this Magistrate Judge finds that if Plaintiff's allegations are true then COs Willey and Thomas' conduct was intentional, and there is a genuine issue of material fact regarding whether their conduct was extreme and outrageous.  *See Garrestson v. City of Madison Heights*, 407 F.3d 789, 799 (6th Cir. 2005) ("[i]t is generally the duty of the trial court to determine whether a defendant's alleged conduct may reasonably be regarded as so 'outrageous.' Where reasonable minds may differ, the question is for the jury") (citation omitted).

With regard to the question of whether Plaintiff suffered severe emotional distress due to COs Willey and Thomas' conduct, "emotional distress 'includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin,

-21-

disappointment, worry, and nausea.'" *Haverbush v. Powelson*, 217 Mich. App. 228, 235 (1996)

(quoting 1 Restatement Torts, 2d, § 46, Comment j p 77).  The Comment continues:

> The law intervenes only where the distress inflicted is so severe that no reasonable
> man could be expected to endure it.  The intensity and duration of the distress are
> factors to be considered in determining its severity.  Severe distress must be
> proved; but in many cases the extreme and outrageous character of the defendant's
> conduct is in itself important evidence that the distress has existed.

*Haverbush*, 217 Mich App. at 235 (citations omitted).

Plaintiff presents a Comprehensive Psychiatric Examination from Dr. Kameshwari Mehra

dated April 17, 2007:

> **IDENTIFYING INFORMATION**:  Mr. Lee is a 29-year-old Afro-American
> male, who is seen for psychiatric evaluation and medication evaluation again, as
> the patient continued to have problem with his stress, anxiety and this is [causing]
> him not to function.  The patient also has been reporting visual hallucinations in
> the form of seeing rats and rodents in his cell, because he [says] that he has been
> stressed out too much.  The patient was seen . . . on 04/06/2007 for psychiatric
> evaluation, at the time, the patient was offered psychiatric treatment, but he
> refused to take it, and reported that he wanted to go to Boot Camp or other facility
> where he will resume his medication.

> **CHIEF COMPLAINT**: The patient reports, "I can't take it anymore.  I am
> stressed out.  Everyone is talking about my sexual orientation and making all
> kinds of bad remarks.  I can't take it anymore.  I need help.  I have been seeing
> rats and rodents in my cell."

> **PRESENT ILLNESS**: The patient reports that he continues to stress out, both the
> staff and prisoners are talking bad things about me and he feels he is hearing that
> somebody [is] telling him to kiss him or do all kinds of sexual things.  The patient
> reports that he cannot take it anymore.  He is not sleeping well.  He is not eating
> well.  He is stressed.

> Mr. Lee continues to report . . . anxiety, stress, nervousness, unable to sleep,
> feeling depressed.  He continues to see rodents and rats in his room. [A]t present,
> he reports that he has been harassed by the staff over here.  He feels that the
> prisoners are advancing towards him for sex.  He continues to fear about these
> things all the time to the level of . . . paranoia.

.      .      .

-22-

**MENTAL STATUS EXAMINATION**: Mr. Lee is a 29-year-old, single Afro-American male, who has [] multiple problems, because of his sexual orientation. He is talking rapidly and appears to be very anxious and tensed and stressed at this time, this is [] all related to the remarks that he is receiving from other people and he feels that he has been traumatized, which has resulted in his problems at this tie.  The patient also is admitting visual hallucinations, which may be related to severe stress[.]

.    .    .

**Proposed Plain of Service/Aftercare Treatment and Placement Recommendations**:

The patient is admitted to the Outpatient Mental Health Team.

(Dkt. No. 1; Ex. D).  While Plaintiff admits that his mental health problems began in the Washtenaw County Jail, this Magistrate Judge finds a reasonable jury could conclude that COs Willey and Thomas' conduct caused his mental health problems to continue.

## V.    CONCLUSION

For the above-stated reasons, **IT IS RECOMMENDED** that Defendants' motion be **GRANTED IN PART AND DENIED IN PART**.  Plaintiff's claims against Warden Ludwick should be **DISMISSED WITH PREJUDICE**.

Plaintiff's Equal Protection claim, deliberate indifference to his serious medical needs claim, cruel and unusual punishment claim, substantive due process claim, right to privacy claim, and his claim under the ELCRA should all be **DISMISSED WITH PREJUDICE**.

Plaintiff's claim that psychologist Dixon and COs Willey, Zischke, Bagley, Owen, and Thomas were deliberately indifferent to his safety should **PROCEED**, in their individual capacities.

Plaintiff's IIED claim against psychologist Dixon and CO Zischke should be **DISMISSED WITH PREJUDICE**.  Plaintiff's IIED claim against COs Willey and Thomas should **PROCEED**, in their individual capacities.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon_____
Mark A. Randon
United States Magistrate Judge

Dated: August 10, 2012

-24-

<u>Certificate of Service</u>

*I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, August 10, 2012, by electronic and/or ordinary mail.*

*s/Melody R. Miles*_____

*Case Manager to Magistrate Judge Mark A. Randon*

*(313) 234-5540*