UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY LEE #631639,

        Plaintiff,                 CIVIL ACTION NO. 10-12625

      v.                        DISTRICT JUDGE NANCY G. EDMUNDS

DEAN WILLEY,                MAGISTRATE JUDGE MARK A. RANDON
T. ZISCHKE, BAGLEY, OWEN,
D. THOMAS, NICK LUDWICK,
KAMESHWARI MEHRA,
PAUL SCHNEEMAN,
WILLS DIXON,

        Defendants.

_____/

**REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART
DEFENDANTS PAUL SCHNEEMAN AND KAMESHWARI MEHRA'S
MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 75 and 76)**

**I.     BACKGROUND**

Plaintiff is a homosexual male, regarded as having effeminate mannerisms. He was

transferred to the Charles Egeler Reception and Guidance Center in Jackson, Michigan ("Charles

Egeler") to begin serving his prison sentence on March 23, 2007. (Dkt. No. 1, Plaintiff's

Complaint at ¶17). Viewed in a light most favorable to Plaintiff, his *pro se* Complaint[1]

chronicles a series of abuses at Charles Egeler during which correctional officers ("COs")

degraded and humiliated him for being a homosexual and made comments in front of other

prisoners.

_____

[1]Plaintiff is now represented by counsel.

On March 26, 2007, Plaintiff told Defendant Paul Schneeman, a social worker at Charles Egeler, that COs were encouraging prisoners to pursue Plaintiff for sex, and prisoners were in fact pursuing him for sex. (Dkt. No. 1 at ¶26). Plaintiff also told Schneeman about his mental illnesses associated with anti-gay abuse, and he asked Schneeman for protection. (Dkt. No. 1 at ¶26). Schneeman told Plaintiff he could not do anything, but he would talk to the sergeant. (Dkt. No. 1 at ¶26).

On April 6, 2007, Plaintiff told Defendant Kameshwari Mehra, a psychologist at Charles Egeler, about his mental illness, that COs were encouraging prisoners to pursue Plaintiff for sex, and that prisoners were in fact pursuing him for sex. (Dkt. No. 1 at ¶28). Plaintiff asked Mehra for protection to no avail. (Dkt. No. 1 at ¶28).

On April 9, 2007, two prisoners – one armed with a weapon – entered Plaintiff's cell and anally raped him. (Dkt. No. 1 at ¶31). Plaintiff alleges that during the assault, one of the prisoners stated, "everybody already knows you wanna fuck, even the police said it, so what's up?" (Dkt. No. 1 at ¶31). Plaintiff went to the officers' desk and asked if he could talk to a mental health professional. He got into an argument with the unidentified CO and demanded a grievance form. Plaintiff's request for a form was denied, and the CO ordered him to return to his cell. (Dkt. No. 1 at ¶32).

On April 11, 2007, Plaintiff told Schneeman about the rape. (Dkt. No. 1 at ¶34). According to Plaintiff, Schneeman told Plaintiff the Michigan Department of Corrections ("MDOC") has a policy that prisoner abuse had to be reported within one hour. (Dkt. No. 1 at ¶35). Schneeman did not want to report the abuse because he feared retaliation from other MDOC staff. According to Plaintiff, Schneeman said "I am powerless to do anything about your situation, but I'll be here to work through it with you." (Dkt. No. 1 at ¶36).

Plaintiff was moved to a new cell in an adjacent building near the officers' station on April 15, 2007.  He considered this new location safe but, a few days later, was moved again, this time to a location he considered unsafe.  (Dkt. No. 1 at ¶41).  The COs continued to harass Plaintiff until he was transferred from Charles Egeler to the Florence Crane Correctional Facility on May 9, 2007.  (Dkt. No. 1 at ¶42).

Plaintiff brought a lawsuit under 42 U.S.C. §1983.  He alleges Schneeman and Mehra (collectively "Defendants") were deliberately indifferent to the sexual and physical assaults he endured from other inmates.  (Dkt. No. 1 at ¶44).  Plaintiff also alleges Defendants were deliberately indifferent to his serious medical needs.  (Dkt. No. 1 at ¶49).

In addition, Plaintiff alleges Defendants' "inaction and action" caused him to suffer cruel and unusual punishment in violation of the Eighth Amendment.  (Dkt. No. 1 at ¶¶ 45, 50).

Further, Plaintiff alleges Defendants failed to train and supervise on how to respond to and treat serious medical needs.  (Dkt. No. 1 at ¶51).

Plaintiff alleges Defendants violated Michigan's Elliot-Larsen Civil Rights Act ("ELCRA") by discriminating against him based on gender and sexual orientation.  (Dkt. No. 1 at ¶52A).  Plaintiff also alleges Defendants deprived him of equal protection rights under the Fourteenth Amendment.  (Dkt. No. 1 at ¶57).

Finally, Plaintiff brought a state-law claim for intentional infliction of emotional distress ("IIED") against Defendants.  Plaintiff seeks injunctive relief, damages, and asks the Court to

certify his lawsuit as a class action.[2] He sued Defendants in their official and individual capacities.

Before the Court are Defendants' Motions for Summary Judgment. (Dkt. Nos. 75 and 76). Mehra filed a supplemental brief on May 10, 2012. (Dkt. No. 85). Plaintiff filed a Response on June 13, 2012. (Dkt. No. 90). Defendants filed reply briefs. (Dkt. Nos. 92 and 93).

Plaintiff is not entitled to injunctive relief; he was paroled on October 19, 2010. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) ("to the extent [plaintiff] seeks . . . injunctive relief his claims are now moot as he is no longer confined to the institution that searched his mail"). In addition, Plaintiff concedes that Defendants cannot be sued in their official capacities. (Dkt. No. 90 at 5). Plaintiff also concedes that his claims against Defendants involving Michigan's ELCRA, the denial of equal protection, failure to train, and failure to supervise are subject to summary judgment. (Dkt. No. 94, Stipulated Order Dismissing with Prejudice Certain Claims Against Defendants Kameshwari Mehra and Paul Schneeman).

For the following reasons, **IT IS RECOMMENDED** that Defendants' motion be **GRANTED IN PART AND DENIED IN PART**.

## II.     STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary

---

[2] On July 1, 2010, Plaintiff filed a Motion For Class Action Certification. (Dkt. No. 3). However, Plaintiff's counsel withdrew this motion, without prejudice, on December 3, 2012. (Dkt. No. 28). Because Plaintiff's counsel has not re-filed a motion for class-action certification, this Magistrate Judge finds Plaintiff's request for class-action certification is moot.

judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of evidence to support the non-moving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury or whether the evidence is so one-sided that the moving party must prevail as a matter of law. *See Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff").

III. ANALYSIS

   A.   Plaintiff's Deliberate Indifference Claims

Plaintiff alleges Defendants were deliberately indifferent to the sexual and physical assaults he endured from other inmates and to his serious medical needs.

           1.   Deliberate Indifference to Plaintiff's Safety

"To raise a cognizable constitutional claim for deliberate indifference to an inmate's safety, an inmate must make a two-part showing: (1) the alleged mistreatment was objectively serious; and (2) the defendant subjectively ignored the risk to the inmate's safety." *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

To satisfy the first prong of his deliberate indifference claim, Plaintiff must show he was incarcerated under conditions posing a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citation omitted). To satisfy the second prong, the Sixth Circuit established the following criteria:

> [t]he plaintiff must establish that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also the draw the inference."

*Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009) (quoting *Farmer*, 511 U.S. at 837). To defeat summary judgment, Plaintiff need only to point to evidence from which a finder of fact could conclude that his vulnerability made his placement in general population a substantial risk to his safety, of which Defendants were aware. *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004). The awareness can be demonstrated through circumstantial evidence. *Id*.

### a.      Kameshwari Mehra

Mehra assumes that Plaintiff's allegations satisfy the objective prong, but argues that Plaintiff does not satisfy the second prong of the analysis, because he says he did not have the authority to place Plaintiff in protective custody. *See* Dkt. No. 76; Ex. C, Kameshwari Mehra Deposition at 18:

| | |
|---|---|
| **ATTORNEY**: | Would you . . . be authorized to obtain some kind of protective custody for a patient[?] |
| **MEHRA**: | No, sir. |

However, co-Defendant Wills Dixon testified at his deposition that Mehra did have the authority to place Plaintiff in protective custody. *See* Dkt. No. 88; Ex. 14 at 31:

| ATTORNEY: | Were you able to have [prisoners] put in a SHMU[3]? |
|---|---|
| DIXON: | Yes. |
| ATTORNEY: | Who were the people who were authorized to make that sort of determination? |
| DIXON: | All of the psychologists. |

In addition, Mehra testified that he has the authority to tell prison authorities if a prisoner needed protection; he did not recall if he told authorities about Plaintiff. *See* Dkt. No. 76; Ex C at 20:

| ATTORNEY: | How about a prisoner who felt threatened by others and who was in fear for his life or his safety? What could you do about that? |
|---|---|
| MEHRA: | I would go to the custody and tell them the whole thing, and because the trustee is responsible for their protection and their safety and custody, they have to take action. And what they do or don't do, with that information is up to them. |
| ATTORNEY: | Now I think you said that you would advise the inmate to go to the custody people? |
| MEHRA: | That's right. Because I don't have that authority. |
| ATTORNEY: | Do you have the authority or the obligation as you understand it to go to the authorities yourself and say, "Here is my patient. I think he is in danger. Do something about it."? |
| MEHRA: | As I said, I will call them and let them know, inform them, and document it and send the documentation to them. |
| ATTORNEY: | And you don't recall one way or the other way whether you did that for Mr. Lee? |
| MEHRA: | No. |

---

[3]Dixon could not recall what SHMU was an acronym for. However, it is a type of secured housing unit. (Dkt. No. 88; Ex. 14 at 29).

Accordingly, this Magistrate Judge finds there is a genuine issue of material fact regarding whether Mehra knew about and disregarded an excessive risk to Plaintiff's health or safety.

Mehra argues that he is entitled to qualified immunity. "In *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), the Supreme Court held that 'government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Salaam v. McKee*, 2008 WL 363598 at *9 (6th Cir. Feb. 11, 2008). A two-part test is used to determine whether qualified immunity applies: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310 (6th Cir. 2005). For a right to be "clearly established," the "contours of the right must be sufficiently clear that a reasonable [government official] would understand that what he is doing violates that right." *Harris v. City of Circleville*, 583 F.3d 356, 366-67 (6th Cir. 2009); *see also Saylor v. Bd. of Educ.*, 118 F.3d 507, 515 (6th Cir. 1997) ("[f]or a constitutional right to be clearly established, as this court has repeatedly noted, 'the law must be clear in regard to the official's particular actions in the particular situation'") (citations omitted).

As stated above, this Magistrate Judge finds there is a genuine issue of material fact regarding whether Plaintiff's Eighth Amendment right was violated. And, the right was clearly established: "[p]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (citations omitted). Based on Dixon's testimony that psychologists had the authority to move prisoners to protective custody and Mehra's testimony that he could have at least informed prison authorities about Plaintiff's concern, this Magistrate Judge finds there is a genuine issue of material fact regarding whether a reasonable psychiatrist in

Mehra's position would have known that failing to move or recommend that Plaintiff be moved to protective custody would violate Plaintiff's constitutional rights. Accordingly, he is not entitled to qualified immunity.

### b. Paul Schneeman

Schneeman's deposition occurred on September 9, 2011. The following exchange occurred during his deposition:

| | |
|---|---|
| **ATTORNEY**: | Having heard [Plaintiff] report that did you understand that he was complaining that various staff people had been making inappropriate remarks about him over the past two weeks? |
| **SCHNEEMAN**: | Yes. |

.    .    .

| | |
|---|---|
| **ATTORNEY**: | Was there anything that you did in response to that – to go to anyone in the prison system about whether those comments had been made, whether they were appropriate or anything like that? |
| **SCHNEEMAN**: | Yes, I did. |
| **ATTORNEY**: | What did you do? |
| **SCHNEEMAN**: | I went to my immediate supervisor and told him that I had a report from one of my clients that he was receiving verbal comments and I think I might have even – I can't really say for sure. I think I told him that, you know, he voiced his concern about some of the things that had been said to him by staff members over the last couple of weeks and I asked him as far as what direction we might take and he said that he would be going to Mr. Trapp who is ADW and speaking to him or following up with him. |

(Dkt. No. 76; Ex. A, Paul Schneeman Deposition at 55-56). This deposition testimony is evidence that Schneeman did not disregard an excessive risk to inmate health or safety; he told his supervisor about the comments by staff members.

Plaintiff argues that MDOC Policy Directive 03.03.140[4] requires Schneeman to make his report in writing.  However, the directive that was in effect when Plaintiff allegedly suffered a sexual assault applied to female prisoners:

> (G)     This policy only applies to female prisoners who are housed at facilities affected by the settlement agreements; i.e., CFA facilities and Field Operations Administration (FOA) corrections centers and Technical Rule Violation centers housing female prisoners.  For purposes of this policy, "facility" means only those facilities unless otherwise indicated.

(Dkt. No. 92; Ex. 13, MDOC Policy Directive 03.03.140 Effective 12/11/2000).  Schneeman's deposition demonstrates an absence of evidence to support Plaintiff's deliberate indifference claim, and Plaintiff does not set forth specific facts showing there is a genuine issue for trial.  Accordingly, Schneeman is entitled to summary judgment on this issue.

## 2.     Deliberate Indifference to Plaintiff's Serious Medical Needs

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain[]' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citation omitted).  The indifference can be manifested by: (1) "prison doctors in their response to the prisoner's needs"; (2) "prison guards in intentionally denying or delaying access to medical care"; or (3) "intentionally interfering with the treatment once prescribed." *Id.* at 104-105.

Plaintiff does not allege that Defendants interfered with his medical treatment or denied him access to medical care.  Instead, Plaintiff simply alleges that Defendants were "deliberately indifferent to [his] serious medical needs, including but not limited to, Post Traumatic Stress Disorder, Psychotic Disorder, Personality Disorder, severe depression[], stress, and anxiety, and

---

[4]Plaintiff attaches MDOC Policy Directive 03.03.140 as an Exhibit (Dkt. No. 90; Ex. 12), but that directive has an effective date of 12/12/10 (approximately 2 ½ years after Plaintiff allegedly suffered a sexual assault in prison).

head trauma all related to anti-gay abuse." (Dkt. No. 1 at ¶49).  This conclusory assertion is "not

sufficient to show a genuine issue of fact necessary for the denial of summary judgment."  *Moore*

*v. Philip Morris Cos.*, 8 F.3d 335, 343 (6th Cir. 1993).

Defendants are entitled to summary judgment on this claim.

**B.      Plaintiff's Cruel and Unusual Punishment Claim**

Plaintiff alleges Defendants' "inaction and action" caused him to suffer cruel and unusual

punishment in violation of the Eighth Amendment.

The Eighth Amendment provides "[e]xcessive bail shall not be required, nor excessive

fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.  In its

purest sense, the Eighth Amendment proscribes cruel and unusual punishment meted out in a

penal or disciplinary sense.  In its application by the courts, the Amendment actually protects a

wide assortment of interests.  It proscribes disproportionate punishments, *see Weems v. United*

*States*, 217 U.S. 349, 366-67 (1910), "unnecessary and wanton infliction of pain," *Gregg v.*

*Georgia*, 428 U.S. 153, 173 (1976) (plurality opinion), and conduct repugnant to "evolving

standards of decency," *Trop v. Dulles*, 356 U.S. 86 (1958) (plurality opinion).

The Constitution "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S.

337, 349 (1981).  On the other hand, it does not permit inhumane ones, and it is clear that "the

treatment a prisoner receives in prison and the conditions under which he is confined are subject

to scrutiny under the Eighth Amendment."  *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see*

*also Farmer*, 511 U.S. at 832.  The Eighth Amendment imposes affirmative duties on prison

officials, "who must provide humane conditions of confinement; prison officials must ensure that

inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable

measures to guarantee the safety of inmates.'"  *Id*. (quoting *Hudson v. Palmer*, 468 U.S. 517,

526-527 (1984)). "In particular . . . 'prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.'" *Farmer*, 511 U.S. at 833 (citations omitted). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* at 834. However, every injury suffered by a prisoner at the hands of another prisoner does not translate into constitutional liability for prison officials responsible for the victim's safety. *Id.*

In order to determine whether an injury translates into constitutional liability, the Court must use the "deliberate indifference" standard articulated in section III.A.1, above. *See Davis v. Brian*, 1999 WL 503522 at *3-4 (6th Cir. July 9, 1999). In other words, Plaintiff's cruel and unusual punishment claim is duplicative of his deliberate indifference claim for failure to protect, and should be dismissed on that basis.

## C. Plaintiff's State-Law Claim for IIED

Plaintiff alleges Defendants' failure to protect him – despite the risk of sexual victimization – caused him to suffer severe emotional distress and allowed other inmates to sexually assault him.

"To establish a prima facie claim of intentional infliction of emotional distress, the plaintiff must present evidence of: (1) the defendant's extreme and outrageous conduct, (2) the defendant's intent or recklessness, (3) causation, and (4) the severe emotional distress of the plaintiff." *Walsh v. Taylor*, 263 Mich. App. 618, 634 (2004) (citation omitted). According to Michigan law:

> [l]iability for the intentional infliction of emotional distress has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty

-12-

oppressions, or other trivialities.  It is not enough that the defendant has acted with
an intent that is tortious or even criminal, or that he has intended to inflict
emotional distress, or even that his conduct has been characterized by "malice," or
a degree of aggravation that would entitle the plaintiff to punitive damages for
another tort.  In reviewing a claim of intentional infliction of emotional distress,
we must determine whether the defendant's conduct is sufficiently unreasonable
as to be regarded as extreme and outrageous.  The test is whether "the recitation of
the facts to an average member of the community would arouse his resentment
against the actor, and lead him to exclaim 'Outrageous!'"

*Graham v. Ford*, 237 Mich.App. 670, 674-675 (1999) (citations omitted).

Unlike the MDOC Defendants, Plaintiff does not allege that Mehra made homosexual

comments in front of other inmates or encouraged inmates to pursue Plaintiff for sex.  Plaintiff

simply alleges that Mehra's failed to protect Plaintiff.  This Magistrate Judge finds as a matter of

law that Mehra's "inaction" of failing to tell a supervisor about Plaintiff's complaints and failing

to move Plaintiff to protective custody – when he did not subjectively believe he could do so –

does not constitute extreme and outrageous conduct, and Mehra is entitled to summary judgment

on this issue.

While Plaintiff alleges Schneeman's failure to protect him constituted extreme and

outrageous conduct, this Magistrate Judge disagrees.  As stated above, Schneeman told his

supervisor about comments made by staff members, and provided Plaintiff counseling sessions.

(Dkt. No 90; Ex. 2 at 58-59).  Accordingly, Schneeman took some action, and he is entitled to

summary judgment on this issue.

IV.     CONCLUSION

For the above-stated reasons, **IT IS RECOMMENDED** that Defendants' motions be

**GRANTED IN PART AND DENIED IN PART**.  Plaintiff's claims against Defendants for

deliberate indifference to his serious medical needs, cruel and unusual punishment, failure to

train and supervise, violation of Michigan's ELCRA, violation of Plaintiff's equal protection rights, and IIED should be **DISMISSED**.

Plaintiff's deliberate indifference to his safety claim against Mehra should **PROCEED**, in Mehra's individual capacity; his deliberate indifference to his safety claim against Schneeman should be **DISMISSED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon
Mark A. Randon
United States Magistrate Judge

Dated: August 22, 2012

*Certificate of Service*

*I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, August 22, 2012, by electronic and/or ordinary mail.*

*s/Melody R. Miles*
*Case Manager to Magistrate Judge Mark A. Randon*
*(313) 234-5540*